**Exhibit B**

Relevant Pages of the June 3 Section 341 Meeting Transcript

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
Case No. 25-10369-lgb
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In the Matter of:

CITI CONNECT, LLC

Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

United States Bankruptcy Court
One Bowling Green
New York, NY 10004

June 3, 2025

341 Meeting of Creditors

B E F O R E :
DANIEL RUDEWICZ
U.S. TRUSTEE

A P P E A R A N C E S :

U.S. DEPARTMENT OF JUSTICE
Attorney for United States Trustee
One Bowling Green
New York, NY 10004

BY: DANIEL RUDEWICZ

ECKBERT SEAMANS CHERIN & MELLOTT LLC
Attorney for Debtor
10 Bank Street, Ste 700
White Plains, NY 10606

BY: NICHOLAS A. PASALIDES

VIRGINIA & AMBINDER, LLP
Attorney for Joint Industry Board of the Electrical
Industry Local 3 Benefit Fund
40 Broad Street, 7th Floor
New York, NY 10004

BY: MAURA MOOSNICK

Transcribed by: Sonya Ledanski Hyde

MR. HEREDIA: Are they affiliated?

MR. RUDEWICZ: Yes.

MR. HEREDIA: I'm not sure.

MR. RUDEWICZ: Okay.

MR. HEREDIA: Yes. No.

MR. RUDEWICZ: Who owns Citi Connect Industries LLC?

MR. HEREDIA: I do. And the subpoena, I'm 51 percent owner on that one also.

MR. RUDEWICZ: Okay. And why does --?

MR. HEREDIA: So, I came in after '23, so I'm not, so I'm not familiar with the situation and all the payments and -- before '23. This all happened before I came into the company.

MR. RUDEWICZ: Okay. So, when did you acquire ownership of the Debtor?

MR. HEREDIA: In '23.

MR. RUDEWICZ: What's --?

MR. HEREDIA: January '23.

MR. RUDEWICZ: January, you said?

MR. HEREDIA: Yes.

MR. RUDEWICZ: So, in January of 2023, and then when did you become an owner of Citi Connect Industries LLC?

MR. HEREDIA: The same time.

MR. RUDEWICZ: January 2023?

MR. HEREDIA: So, Industries was doing construction work for LLC.

MR. RUDEWICZ: Okay. So, Citi Connect Industries LLC did construction work for the Debtor. Is that correct?

MR. HEREDIA: Correct.

MR. RUDEWICZ: And why does Citi Connect Industries LLC owe money, owe over $1 million to the Debtor?

MR. HEREDIA: Excuse me?

MR. RUDEWICZ: You've listed an amount due from Citi Connect Industries LLC, over $1 million is owed to the Debtor. Is that correct?

MR. HEREDIA: Yes, that's for management fees over the '21, '22, '23.

MR. RUDEWICZ: Okay. And you became a part owner in January of 2023. That's correct?

MR. HEREDIA: Correct.

MR. RUDEWICZ: And can you please describe those management fees?

MR. HEREDIA: They share an office. They have a staff doing paperwork, back end, invoices, prints, you name it. I'm not really in the office; I'm in the field. That's my -- I'm in the field all the time, so that's back end, the office work.

MR. RUDEWICZ: Okay. And approximately, how much did they pay, how much was owed every month, for the back-

MR. HEREDIA: No. I don't think so. That was it.
MR. RUDEWICZ: We just described one.
MR. HEREDIA: Okay, yeah. Yes, the two -- this was added, correct, the $2,993,874.66.
MR. RUDEWICZ: Okay. And so, why does the Debtor owe Citi Connect Industries that amount?
MR. HEREDIA: So, that's construction work and part of -- that's mostly construction work, unpaid invoices.
MR. RUDEWICZ: Okay.
MR. HEREDIA: So, construction work. So, Industries does the construction work for LLC.
MR. RUDEWICZ: And would the Debtor issue purchase orders or work orders?
MR. HEREDIA: I'm not sure. I believe, so there should be.
MR. RUDEWICZ: Okay.
MR. HEREDIA: Invoices.
MR. RUDEWICZ: So, there are invoices between the Debtor and Citi Connect Industries?
MR. HEREDIA: Correct.
MR. RUDEWICZ: Okay. One second. Okay, so other than those two changes, were there any others?
MR. HEREDIA: No, I don't believe so.
MR. RUDEWICZ: Okay.
MR. HEREDIA: For the most part, we get prints and

That's, like I said, I'm in the field all the time. I don't, I'm not accounts payable and I'm not in the office, back end. So, something that Mr. Pino would have a better idea, answer for you.

MR. RUDEWICZ: And who did you acquire your ownership of the Debtor from?

MR. HEREDIA: Excuse me?

MR. RUDEWICZ: You became a part owner in January of 2023, that's what you testified to before. Is that correct?

MR. HEREDIA: Yes.

MR. RUDEWICZ: Did you purchase your ownership stake from anybody?

MR. HEREDIA: yes.

MR. RUDEWICZ: Who did you purchase it from?

MR. HEREDIA: I bought my shares, I bought some shares from Mr. Pino.

MR. RUDEWICZ: So, all of the ownership shares that you purchased were from Mr. Pino?

MR. HEREDIA: Correct. He was 100 percent owner.

MR. RUDEWICZ: Okay. And at the time you purchased it, did you review any financial statements of the Debtor?

MR. HEREDIA: Yes.

MR. RUDEWICZ: Okay. And at that time, did you

notice if there were any significant loans to any entity?

MR. HEREDIA: No.

MR. RUDEWICZ: You didn't notice or you -- there weren't any loans?

MR. HEREDIA: There weren't any; no loans.

MR. RUDEWICZ: Okay. So, since -- at the time of January 2023, there were no loans to Corbel Communications Industries. After January 2023 --

MR. HEREDIA: I didn't notice any. Yeah, so answer is no, I didn't notice any. But after '23, no.

MR. RUDEWICZ: Okay. How much did you pay for your ownership stake in the Debtor?

MR. HEREDIA: $36,000.

MR. RUDEWICZ: $36,000, okay.

MR. HEREDIA: $36,000, something like that 104, 100.

MR. RUDEWICZ: Okay. And are there any -- if there were any transfers or loans that were currently outstanding, where are those reflected on the schedules and statement of financial affairs?

MR. HEREDIA: That's before my time, so I don't -- I'm not sure.

MR. RUDEWICZ: But you filled out, you signed under the penalty of perjury, these schedules and statements. Is that correct?

questions regarding Corbel Communications Industries, which Mr. Heredia said you could answer. Can you please describe any loans that were made by the Debtor to Corbel Communications Industries?

MR. PINO: There was a loan made to cover payroll on an emergency basis, that was made to -- I don't know the exact date, but that was just, basically, a short term. It was supposed to be a short-term loan for payroll.

MR. RUDEWICZ: Okay. And on or around -- I know you said you don't know the exact date off the top of your head -- on or around what month did this loan, month and year, did this loan occur?

MR. PINO: It should have been 20, September of '22.

MR. RUDEWICZ: Okay. And how much was this loan for?

MR. PINO: Around $230,000.

MR. RUDEWICZ: Okay. And has Corbel Communications paid off the loan?

MR. PINO: Well, no. What happened -- there was, there's quite a chain of events that took place. So, at the time when this loan was made it was -- again, as I stated, it was supposed to be a short-term loan. Corbel was in the process of selling its non-New York assets to another company. And that loan was just made to cover the last

payroll, because Corbel was in a very bad financial situation and the purchase, or the sale, was supposed to help pay everything back. And unfortunately, the company that was buying Corbel at the time, sent approximately $20 million of fake wires from banks to us at Corbel, to our banks, and some of our other equipment vendors. And obviously, nothing ever hit because they were all fake wires. So, that put Corbel in, basically, a gigantic tailspin, where they had to sell, we had to sell, basically, all the assets that we had just to pay back whatever loans we had outstanding. So, Corbel was not able to pay any loans back to Citi Connect at that point.

MR. RUDEWICZ: So, Citi Connect loaned the money to Corbel, and Corbel has not paid back. What's the current outstanding balance.

MR. PINO: So, what we wound up doing was, after speaking to our accountants, we wound up doing was, we decided to, where I would take it as a personal distribution to offset the loan. So, that's why nothing is outstanding at this time.

MR. RUDEWICZ: Okay.

MR. PINO: That's how we were able to satisfy it.

MR. RUDEWICZ: And when did this occur?

MR. PINO: And that was, you know, that should have been back in -- it's either 2022 or 2023, I just don't,

I don't have it off the top of my head but that was, you know, how we worked it out with the accountants. That was under their advisement that it was easy to take it and put it as a personal distribution to offset the loan that way, because I'm entitled, you know, as an LLC owner, I was able to get the personal distributions.

MR. RUDEWICZ: Okay. So, you received a personal distribution from the Debtor?

MR. PINO: Right. That's what we wound up doing, just on the books as a personal distribution.

MR. RUDEWICZ: Okay. And was this distribution to an owner of the Debtor disclosed anywhere on the schedules?

MR. PINO: Well, I believe, if I'm not mistaken, it was, this was settled prior to the application being filed.

MR. RUDEWICZ: And how much was this loan for?

MR. PINO: That was the $230,000 and change.

MR. RUDEWICZ: Okay. And were there any other transfers, either from the Debtor to Corbel Communications or from Corbel Communications to the Debtor --

MR. PINO: Right.

MR. RUDEWICZ: -- above $100,000, in the 48 months prior to the petition date?

MR. PINO: Not that I'm aware of. I'd have to go look.

MR. RUDEWICZ: And you, how much of Corbel Communications Industries do you own?

MR. PINO: 90 percent.

MR. RUDEWICZ: Who owns the other 10 percent?

MR. PINO: My sons each own 5.

MR. RUDEWICZ: And so, you're unaware of any other transfers between the two entities in the -- other than the loan. Is that correct?

MR. PINO: Correct.

MR. RUDEWICZ: Okay. The United States Trustee has completed questions of Mr. Pino at this time. Are there any creditors who wish to question Mr. Pino?

MS. MOOSNICK: Hi. This is Maura Moosnick from Virginia & Ambinder on behalf of the Joint Industry Board of the Electrical Industry, Local 3 Benefit Fund.

MR. RUDEWICZ: Maura, go ahead.

MS. MOOSNICK: Okay. My first question is, what was the ownership makeup of the Debtor before Mr. Heredia bought 51 percent?

MR. PINO: I had 100 percent. Well, actually, it should have been -- yeah, I had 100 percent. It was -- that's the way we had it set up.

MS. MOOSNICK: What was the ownership makeup of Citi Connect Industries LLC before Mr. Heredia bought his 51 percent?

MR. PINO: At the time, I owned 100 percent.

MS. MOOSNICK: Okay. The Debtor transferred $200,000 to Corbel in October of 2023. What was that for?

MR. PINO: In 2023?

MS. MOOSNICK: Yes.

MR. PINO: I don't see any, I don't see where that was transferred. Can you be more specific, what you, where you're getting that number from?

MS. MOOSNICK: Yes. On October 25, 2023, Citi Connect made a transfer to Corbel's M&T bank account, number 6501700656. That was from the Debtor's M&T bank account 6507100661, and it was for $200,000.

MR. PINO: Hold on, hold on. Because I'm going to look for -- you're asking me to look through stuff that -- I've got to look at account numbers now, everything else. All right, could you say that again, please. I got to write this down so I could see what accounts were, where -- so you're saying M&T --

MS. MOOSNICK: So, the Debtor has an M&T back account, number 6501700661.

MR. PINO: Right.

MS. MOOSNICK: And Corbel has an M&T bank account, 6501700656.

MR. PINO: That's not -- okay, that's inaccurate, but go ahead.