# **Exhibit C**

Relevant Pages of the Rule 2004 Transcript

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -

| | |
|---|---|
| IN RE: | ) CASE NO. 25-10369 |
| CITI CONNECT, LLC, | ) JUDGE LISA G. BECKERMAN |
| Debtor. | ) U.S. BANKRUPTCY JUDGE |
| | ) |

- - - - - - - - - - - - - - - - -

REMOTE RULE 30(b)(6) DEPOSITION OF
ANGELO PINO
AS REPRESENTATIVE FOR CITI CONNECT, LLC
THURSDAY, FEBRUARY 12, 2026

.

CRC SALOMON
BY: ATASHA MCKINZIE
2201 OLD COURT ROAD, BALTIMORE, MARYLAND 21208
410-821-4888

Q. Thank you. Is it true and accurate?

**A. Yes.**

Q. Thank you. The category headings labeled 1 through 30, 31 through 60, 61 through 90, and greater than 90, those refer to accounts that are 1 through 30, 31 through 60, 61 through 90, and greater than 90, respectively, past due, correct?

**A. Yes.**

Q. The total amount, including all past due amounts payable from all vendors as of December 2024 -- or December 2021, is $1,706,173.44, correct?

**A. Correct.**

Q. The total amount, including all past due amounts, payable from Citi Connect Industries as of December 2021 is $1,706,174.13, correct?

**A. Yes.**

Q. And please describe the Debtor's relationship with Citi Connect Industries?

**A. That was the company that I owned as well, and they did the construction portion, basically a sub to Citi LLC.**

Q. And when you say a sub to Citi LLC, are they a subsidiary of Citi LLC?

**A. No. Totally separate entity.**

Q. And do you still own Citi Connect Industries?

**A. I own a percentage of it now.**

Q. What percentage?

**A. I don't own the full company anymore.**

Q. What percentage of Citi Connect Industries do you own?

**A. Forty-nine.**

MR. RUDEWICZ: Thank you. Reporter, please mark as Exhibit 6 the document QuickBooks Accounts Payable December 2024.

COURT REPORTER: Yes, sir.

(Whereupon, Exhibit 6 was marked for identification.)

BY MR. RUDEWICZ:

Q. Thank you. Mr. Pino, do you recognize what has been marked as Exhibit 6?

**A. Yes.**

Q. What is it?

**A. Accounts Payable for December 2024.**

Q. Thank you. Is it true and accurate?

**A. Yes.**

Q. The total amount, including all past due amounts, payables from all vendors as of December 2024 is $3,005,991.09, correct?

**A. Yes.**

Q. The total amount, including all past due amounts, payable from Citi Connect Industries as of December 2024 is

**A. Yes.**

Q. And at line 13, the other assets, the end of year amount was 942,682, correct?

**A. Yes.**

Q. In the beginning of your amount for other assets was $4,627,617, correct?

**A. Yes.**

Q. Mr. Pino, do you know what would explain the difference of approximately $3.5 million change in other assets?

**A. It could have been depreciation on equipment if that was it. You know, if they wrote those -- wrote stuff down that way. Again, it could be -- you know, that's what I could think of, but again, I'd have to look and see what was the detail behind it, what the accountants did.**

MR. RUDEWICZ: Thank you. Court Reporter, if you scroll to PDF Page 26. Oh, no, sorry, PDF Page 24.

BY MR. RUDEWICZ:

Q. Mr. Pino, the amount labeled due from affiliate was $4,000,543 and six -- let repeat that. Mr. Pino, the amount listed as due from affiliate for the beginning was $4,543,633, correct?

**A. Yes.**

Q. And the amount listed for ending was $858,698, correct?

Q. And, Mr. Pino, when you would take it as a distribution, would it be in the form of a cash distribution or a property distribution?

**A. Well, it showed cash.**

Q. And, Mr. Pino, the amount of cash distributions to you for the year 2022 was $3,000,644 -- sorry, let me repeat that. The amount of the 2022 cash distributions reported on your Tax Return to Angelo Pino was $3,644,960, correct?

**A. Yes.**

MR. RUDEWICZ: If the Court Reporter could scroll down just a tiny bit so we could get the total distributions at the bottom? Thank you.

BY MR. RUDEWICZ:

Q. And, Mr. Pino, the total amount of cash distributions from the Debtor in the year 2022 was $4,049,955, correct?

**A. Correct.**

MR. RUDEWICZ: Thank you. Court Reporter, please mark as Exhibit 13 the Citi Connect 2023 Tax Returns.

COURT REPORTER: Yes, sir.

(Whereupon, Exhibit 13 was marked for identification.)

MR. RUDEWICZ: Can you scroll down until we see the headline page of the Tax Returns? Thank you. Right there is great. So you can scroll up a tiny bit so that we could get the heading there. Thank you. And I said this was 13,

Q. Do you know when the loan was written off on the financial statements?

**A. I don't know the exact date.**

Q. Do you know the approximate year?

**A. It was -- may have been 20 -- I'd hate to guess wrong. Maybe 2024 -- 2023, 2024, somewhere around there.**

Q. And so this loan was used to have funds provided to one of the companies that you owned, but otherwise it did not do any business with the Debtor, correct?

**A. Correct.**

Q. And when the loan was written off, it was treated as a distribution?

**A. Yes.**

Q. Sorry. Let me rephrase that. When the loan was written off, it was just treated as a distribution from your -- from the Debtor's equity?

**A. Yes.**

MR. RUDEWICZ: Reporter, please mark as Exhibit 15 the Promissory Note 8/31/21.

COURT REPORTER: Yes, sir.

(Whereupon, Exhibit 15 was marked for identification.)

BY MR. RUDEWICZ:

Q. All right. Thank you. Mr. Pino, do you recognize what has been marked as Exhibit 15?

MR. RUDEWICZ: Court Reporter, if you could scroll to the bottom.

BY MR. RUDEWICZ:

Q. Similar to the prior loan, you signed for both the Debtor and Corbel Communication Industries, correct?

**A. Yes.**

MR. RUDEWICZ: Thank you. Reporter, please mark as Exhibit 16, Promissory Notes Corbel, 9/3/21.

COURT REPORTER: Yes, sir.

(Whereupon, Exhibit 16 was marked for identification.)

BY MR. RUDEWICZ:

Q. Mr. Pino, do you recognize what has been marked as Exhibit 16?

**A. Yes.**

Q. Are you familiar with this document?

**A. Yes.**

Q. What is it?

**A. Another Promissory Note.**

Q. Is it true and accurate?

**A. Yes.**

Q. On September 3, 2021, the Debtor made a loan to Corbel Communication Industries in the amount of $220,917.39?

**A. Yes.**

Q. And this was in addition to the prior loans that were

made in the amount of 200,000 and 320,000, correct?

**A. Correct, yes.**

Q. How was this amount arrived at?

**A. Again, you know, payroll, bills, payment to the bank. Whatever was just due at that time we didn't have the cash to cover.**

Q. And like the other loans for 320,000 and 220 -- 200,000, the due date on this loan was December 31, 2021?

**A. That's correct, yes.**

Q. Did Corbel Communications ever pay back this loan?

**A. No.**

Q. Was this loan treated as a distribution to your equity account for the Debtor?

**A. Yes.**

MR. RUDEWICZ: Court Reporter, will you scroll to the bottom?

BY MR. RUDEWICZ:

Q. For this Promissory Note for this loan as well, you signed both on behalf of the Debtor and Corbel Communication Industries, correct?

**A. Yes, that's correct.**

MR. RUDEWICZ: Reporter, please mark as Exhibit 17 QuickBooks General Ledger 2021.

COURT REPORTER: Yes, sir.

(Whereupon, Exhibit 17 was marked for

identification.)

EXHIBIT TECH: I'm pulling up 17 now. It is just taking a moment. Okay. You should be viewing 17.

BY MR. RUDEWICZ:

Q. Thank you. Mr. Pino, do you recognize what has been marked for identification as Exhibit 17?

**A. Yes.**

Q. What is it?

**A. General Ledger.**

Q. Is it true and accurate?

**A. Yes.**

MR. RUDEWICZ: Thank you. If the Court Reporter could scroll to line 5200? And up just a tiny bit more, and over to the left. There we go.

BY MR. RUDEWICZ:

Q. Okay. Mr. Pino, in this General Ledger, the transactions marked after 5200 reflect increases in accounts payable to Citi Connect Industries, correct?

**A. Correct.**

MR. RUDEWICZ: Court Reporter, if you could scroll down to line 6200. That's fine, thank you. Or up a little bit, and now to the right a little bit. Thank you.

BY MR. RUDEWICZ:

Q. Mr. Pino, there were a number of transactions from line 5200 to 6200, correct?

**A. Correct.**

Q. With counterparty Citi Connect Industries, correct?

**A. Correct.**

Q. With one transaction per line, there were approximately a thousand transactions with Citi Connect Industries, correct?

**A. Correct.**

Q. Please describe Citi Connect Industries.

**A. They are -- at the time they would just do some construction work. They would do pathway work and maintenance work as well. And they were just acting as a sub to Citi Connect because Citi Connect really didn't do construction. So whatever they had, we would just do and sub it to them.**

Q. Are you referring to subcontract work?

**A. Yeah.**

Q. Okay. So you previously described that Spectrum was the Debtor's client?

**A. Correct.**

Q. The client would -- Spectrum would enter an agreement with the Debtor, correct?

**A. Correct.**

Q. And then the Debtor would enter into agreements with Citi Connect Industries, correct?

**A. Yes.**

Q. Looking back at the General Ledger --

Q. Thank you. Can you please describe those transactions? There's a series of six transactions with Corbel. Can you describe each of those?

**A. Sure. Some of those were the Promissory Notes, and the other was to pay -- where it says NXG Insurance, that was to pay insurance that was due.**

Q. Actually, I'll take those in turn. For the transaction at 8,638, there's listed -- there's a ledger or a transaction described on May 14, 2021, a funds transfer in the amount of 200,000. Is this the $200,000 loan that was described previously?

**A. Yeah, that was the one of the Promissory Notes.**

Q. Okay. Thank you. And for there's also an amount listed on a transaction on August 31, 2021, in the amount of 320,000. Was this the promise -- related to the Promissory Note in the amount of 320,000?

**A. Yes.**

Q. And there is also a transaction for -- on September 3, 2021, in the amount of 220,971.39. Is this related to the Promissory Note agreed to and entered into on the same day with Corbel?

**A. Yes.**

Q. Thank you. For the transaction listed at 8639, there's a transaction on July 30, 2021, in the amount of $149,412 was transferred to Corbel. Do you know what this

the $149,412 transferred to Corbel, was this amount ever intended to be paid back, or was it always -- was it going to be treated as a distribution to the equity holder?

**A. I'm sorry. Could you repeat that again? I'm sorry.**

Q. The transaction listed on July 30, 2021, in the amount of $149,412 was transferred from the Debtor to Corbel. Was this amount ever intended to be paid back by Corbel, or was it always intended to be treated as a distribution to the equity holder?

**A. It was originally intended to be paid back when the sale of Corbel went through.**

Q. Was the amount ever paid back?

**A. No.**

Q. And then how was it treated? Was this also treated as a distribution similar to the Promissory Notes?

**A. Yes.**

Q. With respect to the two transactions on December 3, 2021, in the amount of 25,000 and 100,000, were those amounts ever paid back by Corbel?

**A. No.**

Q. Were those amounts treated as a distribution to the equity holders?

**A. Yes.**

Q. Thank you. If you look at -- of those six transactions we just described, if you look at line 8,644 total

Corbel GF and column S totals the amounts up. The total of these amounts, these transfers to the Corbel, which were not paid back, totaled the amount of $1,015,383.39, correct?

**A. Correct.**

MR. RUDEWICZ: If you could scroll down to 10789. For the Court Reporter, please scroll to 10789.

EXHIBIT TECH: Okay. Should be viewing 10789.

BY MR. RUDEWICZ:

Q. All right. Thank you. Mr. Pino, 10789 lists category of 3033, and it says member one draws. Do you see that?

**A. Yes.**

Q. Okay. And the lines 10787 to 10788 list a -- relate to a transfer of $15,730 -- 753 dollars, correct?

**A. Correct.**

Q. And these were listed as a total member draw of -- or listed as a member draw in the amount of $15,754, correct?

**A. Correct.**

Q. Can you describe the category of member one draws?

**A. That would probably -- so at the time, it would have been if I had to use my personal credit card to pay for something, because our credit -- all of our credit cards were cut off by the bank. So at times when we had -- when we were running low on cash, I just tried to use my card to pay, you know, whatever little things that I could.**

Q. What was this transaction for?

**A. That was to pay Corporate Services Group. They handled, basically, every time we would get a lien or something, we would get notified, so that was the bill they sent us for their services.**

Q. Thank you. And then on July 27, 2022, there was a transaction with Corbel in the amount of $14,627.99. Do you see that?

**A. Yes.**

Q. What was this transaction for?

**A. That was to pay some of our insurance.**

Q. And in both of those transactions, there's a positive transaction and a negative transaction. Does that mean that Corbel repaid the amounts?

**A. It looks that way.**

MR. RUDEWICZ: Thank you. If you go to 54 -- Court Reporter, can you scroll to 5423? Oh, it's already up there.

BY MR. RUDEWICZ:

Q. Mr. Pino, in the same category of Corbel GF, there's a general journal entry on December 31, 2022, in the category of 30 -- 300 member one draws in the amount of a negative $1,107,216.00, correct?

**A. Yes.**

Q. What was this distribution for?

**A. I don't recall off the top of my head. It's probably**

**just a distribution that the accountants used.**

Q. To reduce the Corbel GF account.

**A. I would believe so.**

Q. Would this be when the distribution on account of equity was made?

**A. I would believe, if that's the way that they booked it, yes.**

Q. Thank you. Can you scroll to 6284? All right. Thank you. Mr. Pino, line 62 -- 6287 lists a general journal entry on December 31, 2022, in the amount of $4,020,193. Do you see that?

**A. Yes.**

Q. What does this transaction reflect?

**A. I think that's however they wrote the distribution. The accountants took it.**

Q. So in the year 2022, you took a distribution in the amount of just over 4 million, correct?

**A. Yes.**

MR. RUDEWICZ: Thank you. Reporter, please mark as Exhibit 19 the QuickBooks General Ledger 2023.

COURT REPORTER: Yes, sir.

(Whereupon, Exhibit 19 was marked for identification.)

BY MR. RUDEWICZ:

Q. Thank you. Mr. Pino, do you recognize what has been

**$22,000, if I'm reading it right.**

Q. Okay. Thank you. And did the Debtor ever -- are you aware if the Debtor ever paid back this loan to Corbel?

**A. I don't think so.**

Q. And for this loan with Corbel Communications, who negotiated the loan?

**A. It would have probably just been me.**

Q. Do you know how much the interest rate was on the loan?

**A. I don't know. I don't recall.**

Q. Was there any documentation for this loan?

**A. Not that I recall. No.**

Q. All right, if you can scroll to 4275. Thank you. Mr. Pino, in the category labeled total 3300 member one draws, there are a series of transactions labeled Nationstar Mortgage LLC in the amount of approximately 6 to $7,000. Do you see that?

**A. Yes.**

Q. Can you please describe what these payments were for?

**A. A mortgage payment.**

Q. A mortgage payment for -- on behalf of you or a different equity holder?

**A. On behalf of me.**

Q. So this was paid for your personal residence?

**A. Yes.**

Q. So, Mr. Pino, your testimony is that the Debtor would pay out monthly mortgage payments on your personal residence?

**A. I believe it was taken as a distribution.**

Q. Thank you. If you could go to 4286, there's a general journal entry in the amount of $4,049,955. Do you see that?

**A. Yes.**

Q. Do you know what this amount was for?

**A. I think that was just, again, a distribution that the accountants were going through.**

MR. RUDEWICZ: Thank you. Court Reporter, if you can scroll to 7374.

BY MR. RUDEWICZ:

Q. Mr. Pino, do you see the category in 7375 that says officer salary?

**A. Yes.**

Q. And was the salary paid to you?

**A. Yes.**

Q. Do you see that the amounts were $500, paid approximately every two weeks?

**A. Yes.**

Q. Did you take any other salary?

**A. No, nothing. No.**

Q. Okay. Did Carlos Heredia take a salary?

**A. I believe so.**

payments on your personal residence, correct?

**A. Yes.**

Q. Okay. And then at line 3466, there is a loan to shareholder in the amount of $250,189, correct?

**A. Correct.**

Q. What was this loan?

**A. Oh, God, let me think. I think that was just one of the things the accountants were doing to -- it was like a receivable they were doing to how they listed it.**

Q. Did the Debtor make a cash distribution to any shareholder in the amount of $250,000?

**A. No, it was all just on-the-books distribution.**

Q. So this amount was a distribution to a shareholder? Do you know what shareholder it was?

**A. It was probably me.**

Q. Thank you.

MR. RUDEWICZ: Can you scroll to 5892? And actually, I've already asked this question for previous years. We can go -- Reporter, can you go to Exhibit 19 QuickBooks General Ledger? Oh, sorry, not 19. Exhibit 21, QuickBooks General Ledger 2025. And if you could -- oh, sorry.

(Whereupon, Exhibit 21 was marked for identification.)

BY MR. RUDEWICZ:

Q. Mr. Pino, do you recognize what has been marked for